50 CCPA
**GLOBE-UNION INC., Appellant,**

v.

**Dudley B. CLARK, d.b.a. Clark Electronic Laboratories, Appellee.**

**Patent Appeal No. 6890.**

United States Court of Customs and Patent Appeals.

Jan. 16, 1963.

John W. Michael, Michael, Best & Friedrich, Milwaukee, Wis., Spencer B. Michael, Washington, D. C., and Gerrit D. Foster, Milwaukee, Wis., for appellant.

Submitted on record on behalf of appellee.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH, and ALMOND, Associate Judges.

MARTIN, Judge.

This is an appeal from the decision of the Patent Office Trademark Trial and Appeal Board dismissing an opposition to registration of the word CELAB for electrical composition resistors in the form of solid state transducers, such as load cells and pressure resistors.

The applicant, appellee here, is Dudley B. Clark, doing business as Clark Electronic Laboratories. Use of the mark by appellee on the recited goods since 1955 is alleged. The opposer-appellant, Globe-Union Inc., is the owner of the registered mark CENTRALAB for radio signaling apparatus and parts thereof, comprising condensers, grid leaks, potentiometers, rheostats, vacuum tube detectors, switch arms and levers, transformers and tuners [1] and for electrical and electronic apparatus, including fixed and variable resistors and capacitors.[2]

The board found the appellant to be the prior user. It also held that the goods of both parties comprise variable resistors which purchasers would be likely to attribute to the same source if they were sold under the same or confusingly similar marks.

Appellant, in an attempt to show that CELAB so resembles its trademark CENTRALAB as to be likely, when applied to appellee's resistors, to cause con-

1. Reg. No. 204,006, issued October 6, 1925 to a predecessor, published under Sec. 12(c) of the Act of 1946 on April 27, 1948; renewed.

2. Reg. No. 502,313, issued Sept. 21, 1948.

fusion or mistake or to deceive purchasers, relies on four letters received by it in the regular course of business from various persons, three requesting information concerning CELAB pressure sensitive resistance material, and the fourth, requesting information concerning a "Pressure Cell," but not relating it to the trademark CELAB.

Appellee filed no brief before this court. However, it asserted in its answer to the notice of opposition that its mark CELAB is so dissimilar to appellant's trademark CENTRALAB in sound, appearance and meaning that confusion or mistake or deception of purchasers is not likely.

The board, considering that the four letters were received over a two-year period, believed them to be of little significance and by no means conclusive as to the question of purchaser confusion. The board further concluded that confusion, mistake or deception of purchasers is not reasonably likely to occur. It stated:

"While 'CELAB' and 'CENTRA-LAB' are alike in that each comprises the letters 'CE' and 'LAB', they are, however, when considered in their entireties, readily distinguishable in sound and appearance and do not have the same suggestive connotation. In view of the differences between these marks, and since it would appear from the nature of the goods of the parties and the advertising material of record that such products ordinarily would be purchased by technically trained and informed persons, it is concluded that confusion, mistake, or deception of purchasers is not reasonably likely to occur."

Appellant urges several reasons for reversal of the board's decision. It points out that CENTRALAB and CELAB when considered in their entireties are sufficiently similar in sound, appearance and suggestive connotation as to be likely to cause confusion as to source. It is argued that CELAB is merely a "telescoped version" of CENTRALAB. It is further contended that the four letters

received by appellant in the regular course of business requesting information concerning CELAB pressure sensitive material are at least entitled to consideration as an indication of probable confusion.

The goods of the respective parties are obviously very closely related and are in the same channels of trade. Thus we are convinced the board was correct in holding that purchasers would be likely to attribute them to the same source if sold under the same or confusingly similar marks. The only question before us is the ultimate issue of whether the use of CELAB on appellee's goods is likely to cause confusion among purchasers which would preclude registration under the provisions of the Lanham Act.

It is true that, for the most part, the goods of both parties would be purchased by people experienced in the electronic field. Certainly these people would be considered a discriminating group which should be quite discerning insofar as trademarks are concerned. As noted previously, the board gave this fact as one of the reasons for concluding that purchaser confusion is unlikely. However, the letters introduced in evidence indicate some confusion as to source by people in this very group. A letter from General Electric Company to CENTRA-LAB states:

"Centralab
"Div. Globe Union, Inc.
"932 E. Keefe Ave.
"Milwaukee, Wisconsin
"Gentlemen:
  "Please send information on CELAB Pressure-Sensitive Powders for variable resistance.
  "Thank you.
      "Very truly yours,
    "s/ Robert T. Ellis
      "R. T. Ellis
      "Insulation & Non-Metals
        Laboratory
      "LOCOMOTIVE & CAR
        EQUIPMENT DE-
        PARTMENT
"dh"

One from the Director of Engineering of ALTEC Lansing Corporation to the Chief Engineer, CENTRALAB, reads:

"Centralab
"914Y E. Keefe Avenue
"Milwaukee 1, Wisconsin
"Gentlemen:
        "Attention Chief Engineer
"The October issue of TELE-TECH described in their RADARSCOPE Department a pressure sensitive resistance material called 'CELAB.' On the chance that this material is manufactured by Centralab, I am addressing a request to you for such further information on pressure sensitive resistors as you may be able to supply.
        "Very truly yours,
        "ALTEC LANSING CORPORATION
        "s/ E. S. Seeley
        "E. S. Seeley
        "Director of Engineering
"ESS:g"

The other one from an individual offering research and development services, states:

"Centralab Division
"Globe-Union Inc.
"932 East Keefe Avenue
"Milwaukee 1, Wisconsin
"Gentlemen:
"I recently noticed in one of the electronic journals an announcement of a new, pressure sensitive resistance material which was given the name 'celab'. I am presently engaged in the design of several pressure sensitive devices in which it might be possible to employ a material of this nature. While your company was not specifically named as the manufacturer of this material, I imply from its name that you may be the manufacturer.
"If my assumption is correct, I would appreciate receiving from you any technical or other descriptive material which you may have concerning properties of 'celab'.
        "Very truly yours,
        "s/R. P. Gutterman
        "R. P. Gutterman
"RPG:ajw"

Although only three of the four letters are significant [3] at least they do negate that reason for the board's conclusion, i. e. that purchaser confusion would be unlikely because the purchasers are discriminating.

While it is true that the marks are distinguishable in sound and appearance, we do not agree with the board that they do not have the same "suggestive connotation." This fact is more apparent, of course, when the marks are not seen together. It should be remembered that the separate and disassociated viewing of the marks really represent the environment in which they are used in commerce. What actually causes two marks to have the same suggestive connotation or to create the same mental impression so as to indicate a common source, as the two at bar do, is not always easy to define. However, in this instance, we are of the opinion that it is caused by the fact that both marks begin with the letters "CE" and end with "L–A–B," and the letters "N–T–R–A" in CENTRALAB really play an insignificant role in this mental process. Under these circumstances we believe that purchaser confusion is likely to occur. Therefore, we *reverse* the decision of the board.

Reversed.

WORLEY, Chief Judge (concurring).

The facts here are so evenly balanced that I concur in the result solely on the ground that doubt should be resolved in favor of the first user, here CENTRALAB, and against the newcomer.

RICH, Judge (concurring).

I agree with the result and with the court's opinion except for its concluding

3. Two of the letters encompass the goods of the application and the other one is directly related to those goods.

paragraph, which fails to express my feelings.

I cannot see in the marks CELAB and CENTRALAB either the "same suggestive connotation" or the possibility of creating the "same mental impression." CELAB is meaningless except as an indication of origin. CENTRALAB seems an obvious contraction of the common words "central" and "laboratory" and thus has a connotation.[1] There is neither similarity in sound nor appearance, however, so I am unable to see how either the connotation or the mental impression created can possibly be the *same*, except in the ultimate sense of indicating common origin.

What seems to have caused actual confusion, as shown by the letters in evidence, and is, in my opinion, likely to cause much more, is the fact that CELAB and CENTRALAB, in the words of section 2(d), *so resemble each other as to be likely to confuse*. Since CELAB consists of the first two and the last three letters of CENTRALAB, the former mark gives people the impression that CENTRALAB has contracted its name to make another trademark for one of its products. This is a common practice in business. Hence to businessmen it seems probable that a product marked CELAB would come from the CENTRALAB people, regardless of their corporate name.

I believe that it is the mind of the beholder that bridges the obvious differences between these marks and reasons out from them a probable common source for the goods bearing the two marks, so as to result in confusion. The resemblance between the two marks is of such a nature as to make this not only possible but probable. The letters in evidence show that this has happened several times and they are entitled to much more weight than the board gave them, for, I

would assume, they are just the visible portion of the iceberg.

Confusion being likely, it follows that the prohibited degree of resemblance is present.

---

1. Reg. No. 204,006 in fact shows that the mark was originally adopted and used by Central Radio Laboratories, so the probable derivation which one would infer from the mark appears to correspond with actual fact. Reg. No. 502,313 is of a mark which includes the initials "CRL" in a small diamond, associated with the word mark, and states that that feature was first used in 1922.